In re George Colin MULCAHY, Debtor.

George Colin Mulcahy, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 94–16442–JNF.
Adversary No. 98–1282.

United States Bankruptcy Court,
D. Massachusetts.

March 8, 2001.

---

Steven J. Drew, Westwood, MA, for George Colin Mulcahy.

Janet Reno, Attorney General, Washington, DC, Gary S. Gross, Special Assistant, United States Attorney, Boston, MA, Mandee A.S. Rosler, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for United States.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the United States' Motion for Summary Judgment and the Plaintiff's Opposition to the United States' Motion for Summary Judgment and Cross Motion for Summary Judgment. The Court heard the cross motions on February 6, 2001. The material facts necessary to decide the cross motions are not in dispute. The issues presented are 1) whether the "returns" submitted by the Debtor to the Internal Revenue Service in 1989 and 1990 for the 1988 and 1989 tax years contained insufficient information from which the Internal Revenue Service could compute the taxes due, thus rendering the taxes due for those tax years nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B)(ii); and 2) whether taxes assessed on November 22, 1993 for the 1988 and 1989 tax years are entitled to priority pursuant to 11 U.S.C. §§ 523(a)(1)(A) and 507(a)(8)(A)(ii) as having been assessed within 240 days of the date of the filing of the Debtor's bankruptcy petition plus the time during which an offer-in-compromise submitted by the Debtor to the Internal Revenue Service was pending.

## II. PROCEDURAL BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on October 6, 1994. He listed no creditors on Schedule E–Creditors Holding Unsecured Priority Claims. On Schedule F–Creditors Holding Unsecured Nonpriority Claims, he listed one creditor:

the Internal Revenue Service (the "IRS") with a claim in the amount of $40,530. On November 15, 1994, approximately two weeks after the § 341 meeting of creditors, the Chapter 7 Trustee filed a Report of No Distribution. On January 9, 1995, the Debtor received a discharge, and, approximately one week later, the Debtor's case was closed.

Almost three years after his case was closed, the Debtor, on December 17, 1997, moved to reopen his Chapter 7 case "for the limited purpose of determining the status of certain debts, specifically 1988 and 1989 Federal Income Taxes that were properly scheduled on his petition and timely filed." As grounds for his motion, the Debtor stated that the IRS had commenced collection activities against him. The Court granted the Motion to Reopen, and, on March 13, 1998, the Debtor filed a complaint against the United States of America seeking a determination that his tax obligations for 1988 and 1989 are dischargeable.

## III. FACTS

The Debtor submitted a 1988 Form 1040 to the IRS on April 17, 1989. The Debtor provided the following information on the Form: his name, his social security number, and his address. He indicated that he was single and that he was claiming only one exemption for himself. On line 12, business income, he inserted the sum of $18,000 before the space provided in the far right margin. On line 23, for total income, the Debtor inserted "$16–18,000." On line 21, adjusted gross income, the Debtor inserted "$16,000–$18,000." The Debtor signed and dated 1988 Form 1040, indicating that his occupation was that of "taxi driver." Along with 1988 Form 1040, the Debtor submitted Schedule C for reporting profit and loss from sole proprietorships. On that Schedule, he provided

his name, address, social security number and a principal business code. The only other information the Debtor provided was on line 31 with respect to net profit or loss. On that line, the Debtor indicated that his net profit was "approximately $16,000–$18,000." The Debtor also submitted Schedule SE but included no information on that schedule other than his name and social security number.

The Debtor sent a letter to the IRS along with his 1988 Form 1040. Dated April 17, 1989, the letter provided the following:

> Dear I.R.S.
>
> Figures for completion of my Schedule C are incomplete.
>
> Based on figures thus far recorded net profit should be between $16,000—$18,000. This is also my total income for line 23 on Form 1040.
>
> I will file an amended return 1040X as soon as the figures are calculated.

On April 17, 1990, the Debtor submitted a 1989 Form 1040 to the IRS. On the 1989 Form 1040, he provided his name, address, and social security number. He indicated that his filing status was single, and he claimed an exemption for himself. Additionally, he signed and dated the return, giving his occupation as that of taxi driver. The only line he completed on the 1989 Form 1040 was line 37, taxable income. He inserted the following: "$14,000 approximately." The Debtor also submitted Schedules C and SE but inserted no figures on them. Moreover, he sent the IRS a cover letter in which he stated the following:

> Figures for my Schedule C are as yet incomplete-
>
> Based on figures thus far recorded taxable income on Line 37 Form 1040 should be approximately $14,000

I will file an amended return Form 1040X as soon as the figures are calculated.

On June 3, 1993, the Debtor, with the assistance of a certified public accountant, filed complete returns for 1988 and 1989, reporting adjustable gross income of $20,384 and $18,895 for 1988 and 1989 respectively and taxes due of $5,010 and $4,578 for 1988 and 1989 respectively. The Debtor never filed amended returns. On November 22, 1993, the IRS assessed the Debtor $5,010 for his 1988 tax liability and $4,578 for his 1989 tax liability pursuant to the returns submitted by the Debtor on June 3, 1993. On March 9, 1994, approximately seven months before he filed his Chapter 7 petition, the Debtor submitted an offer-in-compromise to the IRS, which he subsequently withdrew postpetition.

## IV. DISCUSSION

A. *Section 523(a)(1)(B)(ii)*

■ Section 523(a)(1)(B)(ii) of the Bankruptcy Code provides the following:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—...

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition....

11 U.S.C. § 523(a)(1)(B)(ii). The issue under this section of the Bankruptcy Code is whether the 1988 and 1989 1040s filed by the Debtor in 1989 and 1990 constitute returns.

■ In *U.S. v. Hatton,* 220 F.3d 1057 (9th Cir.2000), the United States Court of Appeals for the Ninth Circuit recognized that the Internal Revenue Code does not provide a statutory definition of the term "return," although the Tax Court developed a widely-accepted interpretation in *Beard v. C.I.R.,* 82 T.C. 766, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir. 1986). 220 F.3d at 1060. The circuit articulated the following test:

In order for a document to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law."

220 F.3d. at 1060–61 (citing *U.S. v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1033 (6th Cir.), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999), and *Beard,* 82 T.C. at 767). According to the circuit court,

[t]he *Beard* definition was derived from two Supreme Court cases, *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), and provides a sound approach under both the Bankruptcy Code and the I.R.C. Furthermore, the *Beard* definition is consistent with the purpose of a return, which is not only to get tax information in some form, but "to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished."

*Hatton,* 220 F.3d at 1061 (quoting *Commissioner v. Lane–Wells Co.,* 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944)).

The Court finds that the 1988 and 1989 Form 1040s submitted by the Debtor to the IRS purport to be returns and were signed. The 1988 and 1989 Form 1040s submitted by the Debtor on April 17, 1989 and 1990, respectively, however, do not contain sufficient information to allow calculation of the taxes due. On both Form 1040s the Debtor estimated his income and failed to include any information about applicable expenses or deductions. In both years, he advised the IRS that his figures were incomplete and approximate and that he would be filing amended returns. Although the Debtor never filed amended returns, in 1993 he filed returns for 1988 and 1989 with income figures that differed substantially from the estimates that he utilized in the original documents. In 1989, the Debtor indicated that his income for 1988 was between $16,000 and $18,000, yet he reported adjusted gross income of $20,384 on the return he submitted in 1993 with the assistance of an accountant. Similarly, in 1990 the Debtor indicated that his income in 1989 was approximately $14,000, yet he reported an adjusted gross income of $18,895 in 1993 for the 1989 tax year.[1]

Because the 1988 and 1989 Form 1040s submitted by the Debtor to the IRS in 1989 and 1990 do not satisfy the test derived from *Germantown Trust* and *Zellerbach Paper*, the operative date for the filing of the returns for purposes of § 523(a)(1)(B) is June 3, 1993 when the Debtor filed adequate returns from which the IRS made assessments for the years in question. Because these returns were filed after the dates on which they were due and within two years of the filing, the

amounts owed are not dischargeable under 11 U.S.C. § 523(a)(1)(B)(ii).

**B.** *Section 523(a)(1)(A)*

■ Section 523(a)(1)(A) provides the following:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed . . . .

11 U.S.C. § 523(a)(1)(A). Section 507(a)(8) provides in relevant part the following:

(a) The following expenses and claims have priority in the following order:

. . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for . . .

(A) a tax on or measured by income or gross receipts . . .

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition . . . .

11 U.S.C. § 508(a)(8)(A)(ii). The court in *Callahan v. U.S. (In re Callahan)*, 168 B.R. 272 (Bankr.D.Mass.1993), succinctly explained how this section of the Bankruptcy Code operates. The court stated the following:

---

1. In view of the deficiencies in the 1988 and 1989 Form 1040s, the Court need not decide whether the Debtor made an honest attempt to satisfy the tax laws. Moreover, the Court need not address the issue, upon which there is a split of authority, of whether a return

filed after the IRS has assessed a tax constitutes a qualifying return that furthers the purpose of self-assessment. *Compare In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999) *with In re Nunez*, 232 B.R. 778 (9th Cir. BAP 1999).

This forbidding provision translates into a fairly simple formula. The Court need only determine whether the tax was assessed within (x) days before the Debtor filed his petition in bankruptcy, where (x) is the sum of 240, 30, and any time during which a qualifying offer in compromise was pending. If the tax was assessed within (x) days before the bankruptcy filing, the debt is excepted from discharge; if the tax was assessed more than (x) days before the filing, it is not excepted from discharge by virtue of § 507(a)(7)(A)(ii).

168 B.R. at 273. In the instant case, the taxes were assessed on November 22, 1993, 317 days prior to the date of the filing of the petition. The offer-in-compromise was pending for 210 days from March 9, 1994 until the date of the filing on October 6, 1994. Thus, only taxes assessed 480 days before the filing, or on or before June 13, 1993, would be dischargeable. Accordingly, the taxes assessed on November 22, 1993 are nondischargeable and are entitled to priority status pursuant to § 507(a)(8).

## V. CONCLUSION

In accordance with the foregoing, the Court shall grant the Motion for Summary Judgment filed by the United States and deny the Motion for Summary Judgment filed by the Debtor.